

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

TERRY HINTON,

    Plaintiff,

v.                             Civil Action No. 3:15cv569

VIRGINIA UNION UNIVERSITY,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b) OR, ALTERNATIVELY, TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS (Docket No. 15). For the reasons stated below, Plaintiff's MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b) OR, ALTERNATIVELY, TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS (Docket No. 15) will be denied.

## BACKGROUND

Plaintiff Terry Hinton ("Hinton") filed a four-count Complaint against Virginia Union University ("VUU"). Count One alleged Title VII sexual orientation discrimination, stating several reprimands in August and September 2013 as the predicate adverse action. (Compl., Docket No. 1, ¶¶ 26-29). Count Two alleged Title VII retaliation, stating (1) the same August and September 2013 reprimands and (2) a supervisor's refusal to

allow Hinton to take VCU classes as the predicate adverse actions. (Compl. ¶¶ 33-36). Count Three alleged Title VII retaliatory harassment, also stating (1) the same August and September 2013 reprimands and (2) a supervisor's refusal to allow Hinton to take VCU classes as the predicate adverse actions. (Compl. ¶¶ 39-41). Count Four alleged an Equal Pay Act claim. (Compl. ¶¶ 43-46).

On May 4, 2015, the Court entered an Order (Docket No. 11) and an accompanying Memorandum Opinion (Docket No. 10) ("12(b)(6) Mem. Op."),[1] granting in part and denying in part VUU's Motion to Dismiss for Failure to State a Claim. (Docket No. 3). Count One was dismissed in its entirety on two grounds: (1) that under Fourth Circuit law, Title VII does not support a claim for employment discrimination based upon sexual orientation; and, in the alternative, (2) that Hinton failed to plead a cognizable "adverse employment action." (12(b)(6) Mem. Op. 8-32). The Court dismissed Count Two in part, as it pertained to the August and September reprimands.[2] The Court dismissed Count Three in its entirety for failure to state

---

[1] Also at <u>Hinton v. Virginia Union Univ.</u>, -- F.3d. --, No. 3:15CV569, 2016 WL 2621967 (E.D. Va. May 5, 2016). The present opinion is keyed to the pagination of the original order.

[2] And also to the extent that the August and September reprimands served as protected conduct giving rise to the alleged retaliatory action of denying class-taking, because a proper chronology was not pled. (Order, Docket No. 11).

sufficiently adverse harassment. The Court declined to dismiss Count Four's Equal Pay Act claim. (Order, Docket No. 11).

In response, Plaintiff filed this Motion for Entry of a Final Judgment Pursuant to Rule 54(b) or, Alternatively, to Amend the Court's May 4, 2016 Order in Order to Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Docket No. 12) and an accompanying memorandum (Docket No. 17) ("Pl.'s Mem."). Hinton seeks to immediately appeal the Court's determination that Title VII does not support a claim for discrimination based upon sexual orientation, either through a partial entry of final judgment under Fed. R. Civ. P. 54 or through certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Pl.'s Mem. 1).

## ANALYSIS

## II. ENTRY OF A PARTIAL FINAL ORDER OF JUDGMENT IS IMPROPER

## A. Legal Standard

Fed. R. Civ. P. 54(b) provides that "[w]hen an action presents more than one claim for relief ... the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

> The tack which the district court must follow to effectuate a Rule 54(b) certification involves two steps ... First, the district court must determine whether the judgment is final .... a judgment "must be 'final' in the

3

> sense that it is 'an ultimate disposition of
> an individual claim entered in the course of
> a multiple claims action.' "  ... Second, the
> district court must determine whether there
> is no just reason for the delay in the entry
> of judgment.

Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335

(4th Cir. 1993) (relying on Curtiss-Wright Corp. v. Gen. Elec.

Co., 446 U.S. 1, 12 (1980)). In making the "no just reason"

determination, "factors the district court should consider, if

applicable, include":

> (1) the relationship between the adjudicated
> and unadjudicated claims; (2) the possibility
> that the need for review might or might not
> be mooted by future developments in the
> district court; (3) the possibility that the
> reviewing court might be obliged to consider
> the same issue a second time; (4) the
> presence or absence of a claim or
> counterclaim which could result in a set-off
> against the judgment sought to be made final;
> (5) miscellaneous factors such as delay,
> economic and solvency considerations,
> shortening the time of trial, frivolity of
> competing claims, expense, and the like.

Braswell Shipyards, Inc., 2 F.3d at 1335-36 (relying on Curtiss-

Wright Corp., 446 U.S. at 1). Finally, the Supreme Court and

Fourth Circuit have recognized that Rule 54(b) certification is

an exceptional procedure. Curtiss-Wright, 446 U.S. 1 at 10;

Braswell Shipyards, Inc. 2 Fed. 3d at 1335.

There can be no question that the first step is satisfied:

the May 4, 2016 order was a final order that dismissed Count One

with prejudice. The dispositive issue, then, is "just reason for delay."

## B.   Just Reason for Delay

The factors enumerated in <u>Braswell Shipyards, Inc.</u> uniformly demonstrate that Rule 54(b) certification is inappropriate in this case.

### 1. Relationship between Adjudicated and Unadjudicated Claims

The first factor, the relationship between adjudicated and unadjudicated claims, is either neutral or weakly counsels against entry of a final judgment.

The Court dismissed Count One, a claim for sexual orientation discrimination in the form of the August and September reprimands, and also dismissed Count Two to the extent that it alleged retaliation in the form of the August and September reprimands. (Order, Docket No. 11). The claims left in the case are Count Two, alleging retaliation in the form of denial of class-taking privileges in retaliation for protected conduct between 2008 and May 2013, and Count Four, alleging an Equal Pay Act claim.

Hinton concedes that "all of [his] claims related to his employment and thus, at least in some respects, they arise out of a common set of facts," but asserts that "the adjudicated and unadjudicated claims in this case involve distinct, discrete,

5

and different questions of law." (Pl.'s Mem. 6) (emphasis in original). Hinton is of the view that the distinct question of law weighs in favor of entry of a final judgment because several other district courts have permitted entry of a partial final judgment where claims involve a common set of facts but distinct legal theories. (Pl.'s Mem. 6-7) (relying on Int'l Union of Electrical, etc. v. Westinghouse Electrical Corp., 631 F.2d 1094, 1098-99 (3rd Cir. 1980); GMAC Mortgage, LLC v. Flick Mortgage Inv'rs, Inc., No. 3:09-CV-125-RJC-DSC, 2012 WL 1098633 (W.D.N.C. Mar. 31, 2012); Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 225 F.R.D. 171 (D. Md. 2004)). Read more properly, these cases do not weigh in favor of entry of a final judgment; they at best show that it is permissible to enter final judgment when claims arise out of the same facts but involve different legal theories. By Hinton's own characterization of the record, this factor is neutral at best.

VUU disputes Hinton's characterization, but VUU's argument does not properly reflect the counts currently in play. The Complaint originally pled: Count One, where the August and September reprimands served as the adverse action, and Count Two, where either the August and September reprimands or the denial of class-taking privileges served as the adverse action. (Def.'s Resp. 4-6). VUU argues that, because the same facts (denial of class-taking privileges) and substantially similar

6

legal standards (discrimination's "adverse employment action" and retaliation's similar-but-slightly-lower "materially adverse action") are in play, the legal standards are not sufficiently distinct to fall within the reach of GMAC, Neuberger-Berman, and Int'l Union. (Def.'s Resp. 4-6). This ignores, however, that the Court dismissed Count Two as it pertained to the August and September reprimands. Therefore, the adjudicated claims are "sexual orientation discrimination in the form of the August and September reprimands" and the unadjudicated claims are "retaliation in the form of denial of class-taking privileges." Thus, VUU is incorrect to say that "the same set of facts - Dr. Green's August and August and September 2013 reprimands — form the basis of both the discrimination and retaliation claims." (Def.'s Resp. 6).[3]

Although the claims do not arise out of identical facts, it is still easily conceivable that certain facts might be involved in defending both claims. VUU alleges, as an affirmative defense, that Hinton's "remaining Title VII claim in Count [Two] is not actionable because the University's treatment of

---

[3] Because the same set of facts and related legal principles govern the adjudicated claims Hinton seeks immediate entry of a final judgment on (Count One's discrimination in the form of the August and September reprimands) and an adjudicated claim on which Hinton does not seek immediate entry of a final judgment (Count Two's retaliation in the form of the August and September reprimands), this analysis is still relevant under the third factor, which is discussed below.

7

Plaintiff was based only upon reasonable, legitimate, non-retaliatory, and non-pre-textual factors." (Def.'s Answer, Docket No. 12, 8). These "legitimate factors" might plausibly rebut a prima facie claim of discrimination in the adjudicated Count One and the prima facie claim of retaliation in the unadjudicated portions of Count Two. E.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973) holding modified by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) (discussing framework by which defendant may rebut a plaintiff's prima facie case of discrimination by showing non-pretextual reason for adverse action); Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243 (4th Cir. 2015) (noting McDonnell Douglas framework's applicablity to retaliation claims). Because a single legal defense developed over the course of discovery might dispose of the unadjudicated portions of Count Two, and also rebut Hinton's prima facie case on the adjudicated Count One, there is a conceivable factual and legal relationship between the adjudicated and unadjudicated claims. Because this relationship is only "conceivable," it does not forcefully counsel in favor of Hinton's request for entry of final judgment. However, it does marginally indicate that entry of final judgment is inappropriate.

### 2. Possibility that the Need for Review Might or Might not be Mooted by Future Developments in the District Court

The possibility that the need for review might or might not be mooted by future developments in the district court strongly counsels against entry of final judgment.

Hinton argues that no factual discovery could make moot the purely legal issue of whether Title VII protects against sexual orientation discrimination. (Pl.'s Mem. 7). This neglects, however, that Hinton has suggested that the Court should also grant partial final judgment on its alternative holding: that Hinton failed to state an allege an adequately "adverse" employment action. (Pl.'s Mem. 15-17). As discussed above, future developments in this Court might unearth a single legitimate reason for both (1) the August and September 2013 reprimands at the heart of the adjudicated Count One and (2) the denial of class-taking privileges in the unadjudicated portion of Count Two. (See also Def.'s Answer 8) (stating affirmative defense of non-pretextual reasons for unadjudicated portions of Count Two).

VUU raises an alternate, and more persuasive, reason that further developments might moot the dispute over Count One: statutory damages limitations. (Def.'s Resp. 6-8). As VUU

9

explains,[4] compensatory and punitive damages in Title VII cases are capped based on the size of the employer, and the statutory cap applies per lawsuit, not per claim. (Def.'s Resp. 6) (relying on 42 U.S.C. § 1981a(b); Hall v. Stormont Trice Corp., 976 F. Supp. 383, 386 (E.D. Va. 1997)). If a jury awarded Hinton $200,000.00 on the remaining portions of Count Two (the statutory maximum for an employer of VUU's size) (Def.'s Resp. 7), then dismissal of Count One would be moot, because Hinton would be barred from additional recovery on that count.[5]

### 3.  Possibility that the Reviewing Court Might be Obliged to Consider the Same Issue a Second Time

The possibility that the Fourth Circuit might be obliged to consider the same issue a second time weighs against partial entry of final judgment.

The Court's alternate holding in Count One dismissed the count for the same reason that it dismissed part of Count Two: the August and September reprimands qualified as neither "adverse employment action" (the standard of employer bad behavior required to give rise to a discrimination claim) nor "materially adverse action" (the lower standard of employer bad

---

[4] And as Hinton does not contest in his Reply.

[5] VUU makes another argument rooted in the notion that factual discovery on Count Two relating to the collateral consequences of Hinton's August and September reprimands might moot Count One (Def.'s Resp. 7-8), but again, this neglects that the Court dismissed the portions of Count Two rooted in the August and September reprimands.

behavior required to give rise to a retaliation claim). (Def.'s Resp. 4-6). Hinton argues that it would be appropriate to enter final judgment in a way which permits the Fourth Circuit to also review the Court's ruling on pleading standards and the nature of "adverse employment actions." (Pl.'s Mem. 16-17). If the Court enters final judgment on the pleading standards and "adverse employment action" portion of its Count One ruling now – as Hinton realizes the Court must, or Hinton's appeal on the sexual orientation portion of the Court's One ruling would be moot (Pl.'s Mem. 15) – then the Fourth Circuit would shortly face the question of whether the August and September 2013 reprimands, as alleged, pled a sufficiently severe "adverse employment action" to sustain Count One. If Hinton subsequently appealed the remainder of the case, including the Court's dismissal of the portions of Count Two dealing with whether Hinton pled a sufficiently severe "materially adverse action," then the Fourth Circuit would face a nearly identical issue. As the Court noted in its Opinion, although "materially adverse action" is a lower standard than "adverse employment action," there is significant potential for overlap between the standards. (12(b)(6) Mem. Op. 46).[6] This means that the Fourth

---

[6] In fact, if the Fourth Circuit disagrees with the Court's analysis that discrimination and retaliation require different standards of employer bad action (adverse employment action in the discrimination context, materially adverse action in the

11

Circuit would be obliged to consider an issue with factual and substantial legal overlap twice: the issue of whether the August and September 2013 reprimands as pled constituted adverse employment action upon partial entry of final judgment (soon), and the issue of whether the August and September 2013 reprimands as pled constituted materially adverse action upon the completion of the case.

### 4. The Presence or Absence of a Claim or Counterclaim which Could Result in a Set-Off Against the Judgment Sought to be Made Final

The presence of a statutory limitation which could result affect the size of the judgment weighs against partial entry of final judgment.

Neither party addresses this factor directly. However, as noted above, the statutory cap on damages means that Hinton might recover everything he is entitled to on Count Two, rendering review of (and potential reinstatement of) Count One moot.

### 5. Miscellaneous Factors Such as Delay, Economic and Solvency Considerations, Shortening the Time of Trial, Frivolity of Competing Claims, Expense, and the Like

Hinton argues several factors in the miscellaneous category: (1) that the dispositive issue of "whether, in the

---

retaliation context), then the Fourth Circuit would face <u>exactly</u> the same legal and factual issue - whether the August and September 2013 reprimands constituted adverse employment action - twice.

wake of Baldwin v. Foxx, Title VII covers sexual orientation discrimination [] is a matter of first impression in this circuit," and "whether clarifying this issue will streamline this - and other similar – litigation and, in turn, will conserve judicial resources." (Pl.'s Mem. 8-9). The miscellaneous provisions do not alter the conclusion that entry of partial summary judgment is inappropriate.

###### i.    There Is No Matter Of First Impression

On the first point, Hinton attempts to relitigate a position that the Court explicitly rejected in its 12(b)(6) Memorandum Opinion and need not reiterate in extensive detail here: Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 143 (4th Cir. 1996) creates a binding rule that Title VII does not cover discrimination based on sexual orientation. (12(b)(6) Mem. Op. 8-15). Although that part of Wrightson began as dicta, it has subsequently been incorporated in a substantive manner into the holdings of several district courts within the Fourth Circuit, including in this district. (12(b)(6) Mem. Op. 10) (relying on, e.g., Henderson v. Labor Finders of Virginia, Inc., No. 3:12CV600, 2013 WL 1352158, at *4 (E.D. Va. Apr. 2, 2013)). The decision of the Fourth Circuit in Wrightson and district court precedent following Wrightson means that the matter of Title VII sexual orientation discrimination is not a matter of first impression in either the Fourth Circuit or this district.

13

Nor does the release of the opinion in Baldwin v. Foxx, EEOC DOC 0120133080, 2015 WL 4397641, at *1 (July 16, 2015)) transform the question into a matter of first impression. (12(b)(6) Mem. Op. 11-15). Aside from the fact that the Fourth Circuit reiterated the Wrightson rule after Foxx was issued, Murray v. N. Carolina Dep't of Pub. Safety, 611 F. App'x 166 (4th Cir. 2015) (unpublished), opinions of the Equal Employment Opportunity Commission ("EEOC") are entitled to deference only to the extent that they have power to persuade. (12(b)(6) Mem. Op. 11) (relying on, e.g., Vill. Of Freeport v. Barrella, No. 14-2270-CV, 2016 WL 611877, at *11 (2d Cir. Feb. 16, 2016); Crump v. TCoombs & Associates, LLC, No. Civ.A. 2:13CV707, 2015 WL 5601885, at &24 n.12 (E.D. Va. Sept. 22, 2015)). As explained in the 12(b)(6) Memorandum Opinion, Baldwin v. Foxx does not persuade.[7]

### ii. Streamlining Litigation

Hinton argues that "streamlining" the case by resolving an appeal on sexual orientation favors entry of partial final judgment because it will: (1) eliminate uncertainty about the

---

[7] Hinton also neglects the equally-persuasive power of several circuit courts of appeals other than the Fourth Circuit which have, contrary to Foxx, incorporated Wrightson into substantive holdings. E.g., Medina v. Income Support Div., New Mexico, 413 1131, 1135 (10th Cir. 2005); Simonton v. Runyon, 232 F.3d 33, 36 (2d Cir. 2000).

amount of damages in this case; and (2) eliminate waste of judicial resources across the Fourth Circuit.

As to the first, Hinton cites to Fox v. Baltimore City Police Dep't, 201 F.3d 526, 532 (4th Cir. 2000) for the proposition that granting partial final judgment may be appropriate where an appeal with settle issues of both class size and damages. (Pl.'s Mem. 11-12). There is no predicate question of class certification in this case. As for damages, as VUU argues and Hinton does not rebut, damages in this case as a whole are capped by statute at $200,000.00. (Def.'s Resp. 6-7) (relying on 42 U.S.C. § 1981a(b); Hall, 976 F. Supp. at 386). Accordingly, damages are already capped within a relatively[8] narrow band, such that the issue of clarifying damages is insufficiently pressing to merit entry of partial final judgment.

Hinton also argues that the question of whether Title VII protects against sexual orientation discrimination is likely to recur, and that accelerating his case to the Fourth Circuit will provide needed guidance to district courts. (Pl.'s Mem. 11-14). The Court does not disagree that this issue is likely to recur; indeed, the Court's 12(b)(6) Memorandum Opinion noted that the question had come before several courts within months of the

---

[8] For federal litigation.

15

EEOC's decision in Foxx. (12(b)(6) Mem. Op. 11-13).[9] But the fact that a question will recur, without more, is not a reason to deviate from the standard practice of appealing once a case is completely concluded.

## C.   Effect of the Court's Alternative Holding

As noted, the Court entered an alternative holding on Count One, dismissing it on grounds that Hinton failed to adequately plead a sufficiently "adverse" employment action to state a claim for Title VII discrimination. (12(b)(6) Mem. Op. 15). Hinton claims that the alternative holding makes it even more urgent to enter a partial final judgment because Hinton cannot seek leave to amend to correct his pleading deficiencies[10] when

---

[9] Hinton noted two pieces of pending Title VII sexual orientation litigation which might be resolved more speedily by Fourth Circuit intervention.

The first, EEOC v. Pallet Companies d/b/a IFCO Systems NA, Inc., Case No. 1:16-CV-00595 (D. Md.), settled out of court – without the benefit of a Fourth Circuit ruling – after Hinton filed his memorandum. "IFCO Systems Will Pay $202,200 In Landmark Settlement Of One Of EEOC's First Sexual Orientation Discrimination Lawsuits," **EEOC** (Jun. 28, 2015) https://www.eeoc.gov/eeoc/newsroom/release/6-28-16.cfm. If anything, Pallet Companies suggests that appellate review is not necessary to streamline litigation.

The second case, EEOC v. Scott Medical Health Center, Case No. 2:16cv225 (W.D. Pa.), is outside the geographical scope of the Fourth Circuit, and would not be bound by a Fourth Circuit ruling.

[10] Presumably under Fed. R. Civ. P. 15(a)(2) (outside 21 days from plaintiff's filing or from defendant's filing of certain motions, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should

the Court's ruling on sexual orientation discrimination under Title VII would make such amendment futile.

If amendment were a simple matter of pleading collateral consequences by way of additional factual allegations, as Hinton suggests in this memorandum (Pl.'s Mem. 15), Hinton should have filed such pleadings under Fed. R. Civ. P. 15(a)(1)(B) when VUU filed its Fed. R. Civ. P. 12(b)(6) motion. Hinton has never sought such leave to replead, and it is not clear from the record before the Court that the "interests of justice," Fed. R. Civ. P. 15(a)(2) would require permitting such an amendment even if Hinton had pled discrimination on the basis of membership in a clearly protected class. The Court cannot conclude that the alternative holding makes appellate resolution of sexual orientation discrimination under Title VII any more urgent in this case.

On the whole, Hinton seems to miss that the Court's alternative holdings found two independently fatal flaws in his pleadings. Because a potentially favorable Fourth Circuit ruling on the sexual orientation discrimination question would not bring Hinton's claim back to life, the existence of the alternative holdings make a grant of partial final judgment substantially less appropriate, not more appropriate.

---

freely give leave when justice so requires."), although this is not specified in Hinton's memorandum.

All relevant factors concerning "just reason for delay" counsel against granting entry of partial final judgment.

## III. CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER § 28 U.S.C. 1292(B) IS INAPPROPRIATE

Certification of an interlocutory appeal is likewise inappropriate.

### A. Legal Standard

A district court may certify one of its orders for immediate interlocutory appeal when the court finds that its order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The statute is typically read as having three independent components, each of which must be present for certification: (1) a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) that an immediate appeal form the order may materially advance the ultimate termination of the litigation. In re Microsoft Corp. Antitrust Litig., 274 F. Supp. 2d 741 (D. Md. 2003); Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc., No. CA 6:13-1067-HMH, 2013 WL 5946109 (D.S.C. Nov. 6, 2013). "Even if the requirements of section 1292(b) are satisfied, the district

court has 'unfettered discretion' to decline to certify an interlocutory appeal if exceptional circumstances are absent." United States ex rel. Howard v. Harper Constr. Co., No. 7:12-CV-215-BO, 2015 WL 9463103, at *1 (E.D.N.C. Dec. 28, 2015).

VUU cites several propositions for, and Hinton does not provide cases against, the settled notion that interlocutory appeals "should be used sparingly" and that their requirements "must be strictly construed," Myles v. Laffitte, 881 F.2d 125, 127 (4th Cir. 1989), that interlocutory appeals are an exception to the general rule limiting appeals to final, id.; DiFelice v. U.S. Airways, Inc., 404 F. Supp. 2d 907, 908 (E.D. Va. 2005); that interlocutory appeals should only be used in "exceptional circumstances," Cooke-Bates v. Bayer Corp., No. 3:10cv261, 2010 WL 4789838, at *2 (E.D. Va. No. 16, 2010); and that interlocutory appeals are reserved for "pivotal and debatable" orders, id.

## B. Application

### 1. A Controlling Question of Law

Hinton initially acknowledges that a "controlling question of law" is "a narrow question of pure law whose resolution will be completely dispositive of the litigation." (Pl.'s Mem. 18) (relying on Fannin v. CSX Transp., Inc., 873 F.2d 1438 (4th Cir. 1989)). Hinton later backtracks and cites LaFleur v. Dollar Tree Stores, Inc., No. 2:12-CV-00363, 2014 WL 2121721, at *2 (E.D.

19

Va. May 20, 2014) for the proposition that "an issue need not be dispositive" to be "controlling" within the language of the statute, merely that "the resolution of [a question] on appeal would 'materially affect the outcome of the litigation." (Pl.'s Mem. 19). Although this question is certainly one of "pure law," it will neither "materially affect the outcome of the litigation" nor be dispositive.

The legal issue of Title VII's protection for sexual orientation will not "materially affect the outcome of the litigation" and is not dispositive. First, there is an alternate legal hurdle: Hinton's failure to plead an actionably "adverse" employment action. (12(b)(6) Mem. Op. 15). Second, there is, by Hinton's own admission, an additional factual hurdle: a need to "cure supposed pleading defects." (Pl.'s Mem. 16). Because the Fourth Circuit could find favorably for Hinton on the legal matter of Title VII's protection for sexual orientation without having the slightest impact on Hinton's ability to revive Count One, certification is inappropriate.

### 2. A Substantial Ground for difference of Opinion

When contemplating certification,

> An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling question of law ... As this Court has explained, when it comes to certifying an issue for interlocutory appeal, "it matters not whether the lower court simply got the

> law wrong ... What matters is whether courts
> themselves disagree as to what the law is."
> ... But just any simple disagreement between
> courts will not merit certification. A
> ground for dispute is "substantial" where,
> for example, the controlling circuit has
> made no comment on conflicting opinions
> among the various circuits ... or where the
> dispute raises a novel and difficult issue
> of first impression.

Cooke-Bates v. Bayer Corp., No. 3:10BCVB261, 2010 WL 4789838, at

*2 (E.D. Va. Nov. 16, 2010) (internal citations omitted). "That

non-binding precedent in other jurisdictions may counsel a

different result does not constitute substantial grounds for a

difference of opinion." United States ex rel. Howard v. Harper

Constr. Co., No. 7:12-CV-215-BO, 2015 WL 9463103, at *2

(E.D.N.C. Dec. 28, 2015).

In this case, as briefly discussed previously in this

opinion and discussed more fully in the 12(b)(6) Memorandum

Opinion, a significant body of decisional law within the Fourth

Circuit compels the conclusion that Title VII does not encompass

sexual orientation discrimination. The Fourth Circuit has

commented on the matter, there are no conflicting opinions among

the various circuit courts of appeals, and there is no novel

question of first impression. The fact that a handful of

district courts outside the Fourth Circuit have concluded

otherwise in the wake of Foxx (12(b)(6) Mem. Op. 12-14) does not

21

mean that there is "a substantial ground for difference of opinion" within the Fourth Circuit.

>    **3. Whether An Immediate Appeal from the Order may Materially Advance the Ultimate Termination of the Litigation**

Hinton argues that certification will "eliminate the possibility of two separate trials (i.e., two separate and distinct sets of district court proceedings: one before appeal and one after appeal)." (Pl.'s Mem. 24). Aside from being over-optimistic on Hinton's part, this characterization neglects that every trial court takes this risk with every decision. It is a routine risk, and one contemplated and accepted by the general rule that appeals should be taken after the conclusion in a case. The possibility of averting two trials does not, in this case, counsel extraordinarily for certification.

In conclusion, this question is not suitable for certification.


## IV. A STAY IS INAPPROPRIATE

Because there are no grounds for entry of partial final judgment or for certification of an interlocutory appeal, it is inappropriate to enter a stay in this case.

**V.    CONCLUSION**

For the reasons stated below, Plaintiff's MOTION FOR ENTRY OF JUDGMENT UNDER RULE 54(b) OR, ALTERNATIVELY, TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS (Docket No. 15) will be denied.

It is so ORDERED.

_____/s/_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 19, 2016